**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TABITHA NEWTON,

        Plaintiff,

-vs-                                  Case No. 6:05-cv-604-Orl-18JGG

SUNTRUST BANK,

        Defendant.

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Doc. 12-1, filed April 3, 2006), to which Plaintiff responded in opposition (Doc. 19, filed April 14, 2006). Plaintiff Tabitha Newton ("Plaintiff") brings this action against Defendant SunTrust Bank ("SunTrust") in a one-count Complaint alleging that SunTrust terminated her employment for exercising her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* After reviewing the motions and memoranda filed by the parties, this Court **GRANTS** Defendant's Motion for Summary Judgment.

### I. BACKGROUND

Plaintiff began her employment with SunTrust on November 3, 1992, as a Sun Service (customer service) Specialist. Throughout her employment with SunTrust, Plaintiff worked in Orlando, Florida. In August 1994, SunTrust promoted Plaintiff to the position of Consumer Loan Operations Specialist II. In September 1996, SunTrust again promoted Plaintiff, this time to Commercial Loan Processor IV. Beginning in 2000, Plaintiff requested and was granted FMLA leave numerous times by SunTrust as a result of migraine headache

suffering (in addition to other ailments). On January 1, 2003, SunTrust granted Plaintiff's request to be placed on intermittent FMLA leave due to migraine headaches. During this period of leave, the Commercial Loan Department to which Plaintiff was assigned relocated from Orlando to Atlanta, Georgia. Plaintiff chose not to relocate to Atlanta, and was instead given the option of either finding another position within SunTrust or accepting a severance package. Plaintiff procured a position as a SunTrust Loan Closing Specialist 2 in the Orlando Business Banking Center under Center Manager Joe Borowski ("Borowski"), effective August 1, 2003.

Plaintiff's new position as a Loan Closing Specialist 2 was subject to an initial 90-day performance review by Borowski and Plaintiff's supervisor, Elba Litton. Prior to the 90-day review, in October 2003, Plaintiff recertified her intermittent FMLA leave. On November 10, 2003, Plaintiff received her performance review, which rated her as a solid performer. Shortly thereafter, from January 14 through January 21, 2004, Plaintiff was incapacitated and absent from work due to back spasms. SunTrust granted Plaintiff's request for FMLA leave, and no adverse action was taken against Plaintiff as a result of this leave. SunTrust's sick leave policy is outlined as follows:

> [E]mployees who are absent from work for three or more consecutive calendar days are required to submit a completed FMLA/Non FMLA Leave Forms Packet. This packet includes a Medical Certification Form that must be completed by the treating health care practitioner and turned into SunTrust's Leave Management Department within fifteen calendar days of the leave. This form is used by the Leave Management Department to determine if the employee is cleared to return to work, whether any work restrictions exist, and whether the leave qualifies as FMLA leave. If the employee fails to submit the completed Medical Certification Form, or fails to do so in a timely manner, the employee may be denied sick leave pay for

> the period of absence. Moreover, the absence will not be counted as FMLA leave, and will not be protected from disciplinary consideration. In the latter regard, employees who are absent from work for three or more consecutive calendar days and who do not provide medical certification for their absence are subject to discipline up to and including termination from employment. . . . Additionally, under SunTrust's attendance policy, employees who exceed a certain number of absences within a specified time period are considered to be excessively absent and are subject to disciplinary action. Such disciplinary action starts with a verbal warning and works up to termination from employment. FMLA leave is specifically exempted from counting as an absence for purposes of this policy.

(Doc. 12, at 4-5.)

Plaintiff has acknowledged her awareness of this policy during her employment with SunTrust. (See Pl. Depo., 86:6-89:4, Jan. 24, 2006.) Two specific examples of Plaintiff's previous dealings with the SunTrust FMLA policy are as follows:

1) Plaintiff received a verbal warning during 2003 for excessive non-FMLA leave.

2) From March 22 to March 25, 2004, Plaintiff was absent from work due to an insect bite and an allergic reaction to the medication taken to treat the bite. Plaintiff's health care provider did not complete the Medical Certification Form and, as a result, was paid sick leave only for the first two days of her absence; the third day was treated as unpaid leave.

On April 19, 2004, Plaintiff went to see her physician, Dr. David Quintyne ("Dr. Quintyne") for an earache. Dr. Quintyne told Plaintiff to stay home from work through April 23, 2004. Because of a complication, Plaintiff was referred later that week to an ear, nose and throat specialist who told her to stay home from work through April 30, 2004. Plaintiff sent a Medical Certification Form ("the Form") to Dr. Quintyne on April 27, 2004, via fax, for him to complete and execute. Dr. Quintyne had filled out this form previous times for

Plaintiff. On May 3, Dr. Quintyne filled out the Form, indicating that Plaintiff would be out of work from April 27 through May 3, and that she was released to return to work, without restrictions, on May 4, 2004. On May 5, Dr. Quintyne revised the Form to indicate that Plaintiff was incapacitated until May 4, 2004, and that Plaintiff would return to work on May 5, 2004. Dr. Quintyne made these changes by handwriting over what he had previously written, and initialed each of these changes (the SunTrust Medical Certification Form indicates that any revisions should be initialed and dated by the physician).

Plaintiff did not return to work until May 6, 2004. Plaintiff claims that she did not receive the Form until the morning of May 6, when she went to Dr. Quintyne's office herself to pick up the Form, in its revised status, prior to reporting to work. Upon returning to work, Plaintiff submitted the Form as well as a doctor's note covering the period from April 19 to April 23, 2004. On May 7, 2004, the day after Plaintiff returned to work, she was informed that the doctor's note covering the period from April 19-23 was not acceptable, and that she would have to submit a Medical Certification Form for those dates. Plaintiff claims that she then contacted Dr. Quintyne's office, whereupon someone told her to change the Form herself and that Dr. Quintyne would sign off on the changes. Plaintiff subsequently changed the Form to indicate an absence from April 19 through May 4. Plaintiff made this change by using whiteout over the original date of April 27, 2004. Plaintiff then submitted the altered Form to SunTrust without Dr. Quintyne's initials indicating his approval of the change.

After the alterations in the Form were brought to the attention of the Human Resources Generalist, Deborah Watson ("Watson"), and the Leave Management Department

Case Manager, Stephanie Brazill ("Brazill"). Borowski met with Plaintiff in his office to discuss the Form. The SunTrust Assistant Center Manager, Janice White ("White"), was also present at the meeting. Plaintiff told Borowski that Dr. Quintyne's office had made the changes to the Form. At approximately the same time as the Borowski-Plaintiff meeting was taking place, Brazill called Dr. Quintyne's office and was informed that the office had not made the uninitialed changes to the Form, and that the office never used whiteout to make changes to any medical forms. Brazill passed this information onto Watson, who subsequently met with Borowski and White. As a result of the meeting, it was determined that Plaintiff had been evasive in her responses, and that if the doctor's office had not made the changes to the Form, then Plaintiff must have made them herself. (Doc. 13-2 at 2, filed April 3, 2006.) Based upon this determination, Borowski testified at his deposition that he decided to terminate Plaintiff because she failed to be honest in her responses to his questions regarding the Form. (Id.) Borowski felt that he could not trust Plaintiff with sensitive customer financial information if she was evasive in answering his questions about the Form. (Id.)

Borowski, still on May 7, called Plaintiff into his office, where he again asked her who had made the changes to the Form. Plaintiff responded that she did not make the change and that Dr. Quintyne's office must have done it. At this point, Borowski terminated Plaintiff for not being forthcoming about her Medical Certification Form.

After her termination, Plaintiff obtained statements and a letter from Dr. Quintyne, on behalf of himself and his office, explaining that someone from his office had told

Plaintiff it was okay for Plaintiff to change the date on the Form herself, and that it would be changed in the office as well. Plaintiff's termination stood, however, and she thereafter filed this lawsuit alleging that SunTrust wrongfully terminated her in retaliation for exercising her rights under the FMLA.

## II. ANALYSIS

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on his pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing

the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

### B. Count I: FMLA Retaliation Claim

Plaintiff claims that SunTrust wrongfully terminated her for exercising her medical leave rights under the FMLA. The Eleventh Circuit has recognized that 29 U.S.C. § 2615 allows for two types of claims: "[1] interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act, and [2] retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because [s]he engaged in activity protected by the Act." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001)). To prove a FMLA retaliation claim, a plaintiff must prove that the employer acted with the requisite retaliatory intent. Because Plaintiff has not presented any direct evidence of retaliatory intent, the Court looks to the familiar three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Strickland, 239 F.3d at 1207.

Under the rubric of McDonnell Douglas, a plaintiff must first set forth a *prima facie* case and prove: (1) she engaged in a statutorily protected activity; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. See McDonnell Douglas, 411 U.S. at 802; Hurlbert, 439 F.3d at 1297. If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to "articulate a legitimate reason for the adverse action." Hurlbert, 439 F.3d at 1297. The plaintiff must then demonstrate that the defendant's proffered reason for the employment action was merely pretext for the action, i.e., that the proffered reason was not the true reason for the employment action. Id.

There is no question that Plaintiff was engaged in a statutorily protected activity (use of medical leave rights under the FMLA) and that Plaintiff suffered an adverse employment action (termination). Next, Plaintiff must show that there is a causal connection between the protected activity and the adverse employment action. Plaintiff fails to bring forth evidence linking her request for leave in April 2004 and her termination from employment in May 2004. However, "[c]lose temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" Id. at 1298 (quoting Brungart v. Bellsouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000)). Therefore, it is necessary for SunTrust to articulate a legitimate reason for the termination.

SunTrust proffers that it terminated Plaintiff because of her lack of honesty regarding the Medical Certification Form. SunTrust explains that Plaintiff was not terminated as a

result of her *request* for medical leave; rather, the decision to terminate Plaintiff was made because of her *lack of honesty* regarding her medical leave.

Under the McDonnell Douglas burden-shifting framework, Plaintiff must offer sufficient evidence to show an issue of material fact as to SunTrust's non-discriminatory reason, i.e., that SunTrust's reason was merely pretext. "If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual, the defendant is entitled to summary judgment." Wascura v. City of S. Miami, 247 F.3d 1238, 1243 (11th Cir. 2001) (citing Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

Plaintiff claims in her Response to the Motion for Summary Judgment that she was terminated so that SunTrust would save money on any severance package to which she may have been entitled. (See Doc. 19 at 1.) Plaintiff has offered no evidence to the Court of any retaliatory intent on the part of SunTrust in her termination from the company. Plaintiff has merely alleged that it is her belief that she has been discriminated against. Mere speculation on the part of Plaintiff cannot serve as basis for a claim. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." Carter v. Miami, 870 F.2d 578, 585 (11th Cir. 1989) (quoting Young v. Gen. Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988)).

Plaintiff also argues that pretext is shown by SunTrust's decision to ignore acknowledgments from Dr. Quintyne's office that Plaintiff may have been given permission

from the office to alter the Form. However, even if Plaintiff had been given permission to alter the Form, the termination decision was made because of Plaintiff's lack of honesty to her supervisors with regard to the alteration of the Form. Plaintiff has failed to directly address SunTrust's proffered non-discriminatory reason for Plaintiff's termination (her lack of honesty). "An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns., 738 F.2d 1181, 1187 (11th Cir. 1984). Because Plaintiff fails to establish that SunTrust's explanation for the termination is merely pretext for a discriminatory purpose, Plaintiff's claim must fail.

## III. CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 12-1, filed April 3, 2006) is accordingly **GRANTED**. The Clerk of the Court is directed to **ENTER JUDGMENT** on behalf of Defendant SunTrust Bank and **CLOSE THE CASE**.

**DONE and ORDERED** in Orlando, Florida on this ___7___ day of June, 2006.

G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties